Bobby E. WILLIAMS

v.

**HEVI–DUTY ELECTRIC COMPANY,
Gerald Block, the State of Tennessee,
Tennessee Department of Employment
Security, Warren C. Neel, in his official
capacity as Commissioner of the Tennessee Department of Employment Security, and Bobby E. Westmoreland.**

No. 2–85–0033.

United States District Court,
M.D. Tennessee,
Northeastern Division.

March 28, 1986.

William Bush, Rural Legal Services, Cookeville, Tenn., Richard M. Brooks, Carthage, Tenn., for plaintiff.

Lawrence T. Lynch, Foley & Lardner, Milwaukee, Wis., for defendants.

## MEMORANDUM

MORTON, Senior District Judge.

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, alleging discrimination by the defendants in employment referral and hiring. The plaintiff alleges racial discrimination as well as retaliatory failure to hire in violation of 42 U.S.C. § 2000e–3(a). Additionally, plaintiff claims the defendant Hevi-Duty Electric Company (hereinafter "Hevi-Duty") breached an October 1982 EEOC settlement agreement by penalizing the plaintiff through denial of employment. For the reasons set forth in the following findings of fact and conclusions of law, Fed.R.Civ.P. 52, judgment shall be entered in favor of the plaintiff against the defendant Hevi-Duty. Judgment shall be entered in favor of the remaining defendants, Gerald Block, State of Tennessee, Tennessee Department of Employment Security, Commissioner of the Tennessee Department of Employment Security, and Bobby E. Westmoreland.

### I.

The court has jurisdiction of this case pursuant to the provisions of 42 U.S.C. § 2000e, *et seq.*, all jurisdictional prerequisites having been fulfilled.

The plaintiff, a black male, resides in Clay County, Tennessee. Defendant Hevi-Duty is a manufacturing firm with its physical plant located in Clay County, Ten-

nessee, and defendant Gerald Block manages the Hevi-Duty plant in Celina. Hevi-Duty employs more than 15 persons and is an industry affecting commerce as defined by 42 U.S.C. § 2000e. Defendant Tennessee Department of Employment Security is an executive agency of the State of Tennessee created for the purpose of administering the unemployment compensation and employment referral programs in Tennessee. T.C.A. § 50–7–101, *et seq.* Defendant Bobby Westmoreland is an employee of the Tennessee Department of Employment Security in charge of the Job Services offices in Celina, Tennessee.

In February of 1981, the plaintiff first applied for employment with Hevi-Duty by filing a written application at the Hevi-Duty plant in Celina. According to the stipulations, the plaintiff is qualified for entry level employment as an hourly employee at Hevi-Duty. Hevi-Duty did not offer a job to the plaintiff, and on March 29, 1982, he filed a complaint with the Equal Employment Opportunity Commission (EEOC) against Hevi-Duty alleging racial discrimination. In October 1982, the plaintiff and Hevi-Duty resolved the dispute and entered into a settlement agreement. Pursuant to that agreement, Hevi-Duty paid $1,800 to the plaintiff. Paragraph 2(b) of the agreement provided that the plaintiff "shall not be penalized in any future considerations for employment or any other employment related matters because of proceedings arising under the instant charge."

In October or November of 1982, shortly following the resolution of the plaintiff's first EEOC charge against Hevi-Duty and in direct response thereto, Hevi-Duty instituted a one-year retention policy for all job applications. Job applications were to be considered "active" for one year from the date of their completion and were to be destroyed after the one-year period. Hevi-Duty was to hire only from "active" applications; "inactive" applications were to be purged from the files and not considered in the hiring process. Don Keith, industrial relations manager for Hevi-Duty at its headquarters in Goldsboro, North Carolina, directed the institution of the policy. Hevi-

Duty asserts that the policy was legitimately implemented to provide a manageable and efficient method of dealing with job applications. Two secretaries at Hevi-Duty testified convincingly as to their instructions when establishing the retention policy. Although the court accepts the testimony regarding the decision to initiate the policy and the steps taken to do so, a number of factors cast grave doubts upon its continued existence and validity.

Office personnel were instructed not to inform applicants of the new policy; nor were those with applications currently on file notified. Pursuant to the policy, applicants who undoubtedly assumed they were in contention for jobs whenever positions became available were to be systematically excluded without notice after one year. Title VII prohibits the selective use of an otherwise valid application process to discriminate against black applicants. The policy, if operational at all, was followed haphazardly. Proper utilization of the policy dictated that the files be purged monthly in order to maintain applications in a current status. At Hevi-Duty, the secretaries destroyed the outdated applications "when they had time." Additionally, no method for identifying the one-year anniversaries of the applications was established. At Hevi-Duty, it was necessary to search each individual folder to determine which applications were obsolete. Further stripping credibility from Hevi-Duty's claim that the one-year retention policy was validly and uniformly maintained is its admission that the new application process was never reduced to writing. While an oral policy is not, of course, invalid in and of itself, the failure to reduce the terms and conditions of an important change in company policy to writing can only be viewed as an aid for company officials to arbitrarily and selectively enforce an everchanging and unascertainable set of rules.

When the one-year retention policy was adopted in October or November of 1982, the plaintiff's application was more than 18 months old. Although the date of the application was clearly beyond the one-year retention period, Block and Keith discussed

the plaintiff's application and agreed to keep it on file for an additional year from the date of the inception of the policy, ostensibly to "be fair" to the plaintiff. No other applications were given this irregular treatment.

Several times following execution of the October 1982 settlement agreement, the plaintiff visited the Hevi-Duty plant to ensure that his application remained on file. On these occasions, the plaintiff was provided with the original application form and was allowed to make necessary changes and/or additions in order to maintain an accurate and complete application. When the plaintiff returned the "updated" application to the secretary, she dated the changes, signed the application, and refiled it. The last such visit occurred in August of 1983. In actual fact, as hereinafter noted, when the application was permitted to be updated, it became a new application as of that date. While the plaintiff was allowed to "update" the original application, he was never told that Hevi-Duty planned to inactivate his application in November of 1983. Naturally, he was led to believe that his application was pending and in line for consideration should openings arise.

No employment applications were accepted at the Hevi-Duty plant during the last half of 1982 and all of 1983, except that of the plaintiff, as previously noted. No new persons were hired in the plant in 1982 or 1983.

In early January 1984, when the plaintiff heard from a friend that Hevi-Duty was "calling back" five people for employment, he visited the plant to check on his applica-

tion and manifested once again his interest in employment. Rene Davis, a secretary at Hevi-Duty, looked through a file containing 25 to 30 applications, but failed to locate the plaintiff's application.[1] She inquired whether he had filed the application within the past year, and he replied that he had not. At that point, the plaintiff was finally informed of the one-year retention policy. Block told him that his application had been destroyed pursuant to the policy and that Hevi-Duty was not accepting applications.[2] Although the plaintiff protested, explaining that he was in only six months earlier to update his application, he was not allowed to file a new application.

Hevi-Duty rehired five former employees on January 3, 16, 18, and 19, 1984. These five employees had been laid off in 1982, and they were rehired in accordance with the dates of their previous seniority at the plant. All five individuals were white males. Although Hevi-Duty bore no legal obligation to rehire these employees, their re-employment was economically advantageous to Hevi-Duty in light of their previous training and familiarity with the plant operations.

The plaintiff filed a second EEOC complaint against Hevi-Duty on January 24, 1984, alleging denial of employment in violation of his rights under the October 1982 settlement agreement and under Title VII. On November 14, 1982, he received a notice of right to sue letter from the EEOC.

In early February 1984, plaintiff heard that Hevi-Duty was hiring through Job Services. He visited the Job Services office [3]

---

1. Had Hevi-Duty been enforcing the one-year retention policy in January 1984, when the plaintiff requested to see his application, Ms. Davis would have known immediately that his application had been destroyed, since no applications had been received within the past year. The presence of 25 to 30 applications as late as January 1984 reinforces the court's finding that the retention policy was not a tool for better management but rather a weapon with which to discriminate.

2. Plaintiff's application was in fact still in Hevi-Duty's files on that day. Block located the application following the plaintiff's departure. Neither Block nor the office personnel at Hevi-

Duty were able to explain why the application eluded Ms. Davis.

3. The date of the plaintiff's visit to Job Services is disputed. Plaintiff recalled only that it was the "early part of February" and that he returned the application to Job Services the following day. Westmoreland failed to remember the date of the plaintiff's visit; however, on December 9, 1984, Westmoreland signed a sworn statement indicating that the visit occurred on February 5, 1984. Since February 5, 1984, fell on a Sunday, the court finds the visit took place on February 6, and the application was returned on February 7—one day prior to Hevy-Duty's three-day hiring period.

and informed Bobby Westmoreland, the chief officer of the Celina branch of Job Services, that he wished to be referred to Hevi-Duty for employment. Only a month earlier Westmoreland had referred the plaintiff for employment to Osh-Kosh, a manufacturing concern in Clay County, Tennessee. Although the plaintiff was hired by Osh-Kosh [4], he expressed a desire to work at Hevi-Duty because of the higher pay scale. Pursuant to the plaintiff's request, his application was placed in a special box for persons desiring work only at Hevi-Duty.[5] The Clay County Job Services Office employs a system whereby it maintains separate boxes for applications from persons requesting referrals to specific employers. A general file is available for those persons desiring employment for any available position regardless of the employer. As a result, persons who are willing to accept employment unconditionally are referred to prospective employers from the general files before persons who indicate a particular preference.

Williams, a veteran with a 10 percent service-connected disability, received no preferential treatment from Job Services for his veteran status.

During the first week of February 1984, Block and Keith discussed hiring new employees for Hevi-Duty. The plant had been awarded a substantial contract early in 1984. Block was generally aware of the probability of the need to hire new workers as early as November 1983. Block, in conjunction with the marketing department, prepared a forecast of the hiring requirements prior to January 1984. That forecast predicted the need for 10 to 15 additional employees.[6] For the first time in 18 months, the application process was opened for a brief three days, from Wednesday, February 8, through Friday, February 10.

Hevi-Duty hired only from new applicants, considering the job applications on file at that time inactive. Keith advised Block to notify Job Services in Celina that they were accepting applications. Block advised Westmoreland at Job Services of their three-day hiring period. Since Block failed to complete a "job order," Westmoreland treated the call as a request for referrals and began sending individuals to the Hevi-Duty plant for interviews. Westmoreland did not complete a search of the files when referring applicants; rather he conducted what he termed "off-the-cuff" referrals on a random basis. A total of nine people applied at Hevi-Duty as a result of Westmoreland's informal referrals, all of whom were white and none of whom had filed EEOC charges against Hevi-Duty.

During this three-day window of time, 32 applications were accepted by Hevi-Duty. Two additional applications were taken on February 13 and 24. Twenty-one persons were hired in February 1984. Of these, one was black [7] and none had filed a discrimination charge against Hevi-Duty. The plaintiff was not offered employment by Hevi-Duty.

## II.

Under Title VII there are two distinct theories available to establish a prima facie case of employment discrimination: disparate treatment and disparate impact. Disparate treatment is

the most easily understood type of discrimination. The employer simply treats some people [or some person] less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. Undoubtedly, dis-

---

**4.** Plaintiff worked at Osh-Kosh from January 1984 to January 1985, when he quit his job due to a disagreement with his foreman.

**5.** Plaintiff's application at Job Services was unavailable at trial. Its loss was unexplained.

**6.** Block testified at another point in the trial that only two or three openings were available when Hevi-Duty accepted applications in Febru-

ary 1984. This inconsistency, coupled with his general evasiveness impels the court to charge Block with a general lack of credibility.

**7.** Richard Burris, a black male, was the first person hired from the 34 applicants. Following the plaintiff's second EEOC charge, it is clear that Hevi-Duty realized the potential significance of hiring a black applicant.

parate treatment was the most obvious evil Congress had in mind when it enacted Title VII.

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977). The landmark case of *McDonnell Douglas Corp. v. Green* [8] establishes the necessary elements of a prima facie case of racial discrimination through disparate treatment. A prima facie case is established by showing (1) that the plaintiff belongs to a racial minority; (2) that he applied for and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. While the foregoing describes the general test to be applied in Title VII cases in determining whether the plaintiff has established a prima facie case, this method "was never intended to be rigid, mechanized, or ritualistic. Rather it is a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 575–76, 98 S.Ct. 2943, 2948–49, 57 L.Ed.2d 957 (1978). Basically, the plaintiff is required to "show actions taken by the employer, from which one can infer, if such actions remained unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Kirby v. Colony Furniture Co.*, 613 F.2d 696, 703 (8th Cir.1980) (quoting *Furnco, supra*, 438 U.S. at 576, 98 S.Ct. at 2949). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employee's rejection. *McDonnell Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant comes forward with such proof, plaintiff must establish that the nondiscriminatory reason given by the defendant was a mere pretext for the alleged discriminatory action. *Texas Department of Community Affairs v. Burdine*, 450

U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). The ultimate burden of persuasion, however, remains at all times with the plaintiff.

The disparate impact doctrine requires the plaintiff to demonstrate that a facially neutral employment practice, in fact, falls more harshly on one protected group than another. If an otherwise neutral selection device impacts adversely upon a minority, the employer has the burden of proving that the device is job-related or justified by business necessity. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Under this theory, proof of discriminatory intent is not required.

Either theory may be applied to a particular set of facts. *Teamsters, supra*, 431 U.S. 324, 335 n. 15, 97 S.Ct. at 1854 n. 15 (1977). They represent alternative foundations upon which liability may be premised.

### III.

■ The plaintiff's claim against Hevi-Duty merits examination under the disparate treatment theory only. This is not a disparate impact case. The one-year application retention policy (operated properly) would exclude *all* individuals whose applications were over one year old. There is no evidence to indicate that the policy *itself* had an adverse impact on minority applicants different from its effect on white applicants. While it is true that the policy excluded all blacks and EEOC claimants from employment consideration in February 1984, that condition arose as a result of Hevi-Duty's refusal to take applications for more than a year and then opening the application process for a very brief interval. Hevi-Duty's "strategy"—in effect its abuse of the policy—excluded all applicants who had applied in 1981 and 1982 and failed to reapply during the three-day period. The court does not prohibit the maintenance of a neutral selection device, which, if operated properly, excludes all stale applications after a uniform period of time. However, as set out hereinafter, Hevi-Duty's actions in manipulating the policy

**8.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

enforcement to exclude the plaintiff from consideration does fall within the prohibitions of Title VII under the doctrine of disparate treatment.

The plaintiff has successfully established the necessary elements of a prima facie case of disparate treatment. The plaintiff's qualifications to be employed at Hevi-Duty were stipulated, and Hevi-Duty offers no reason why the plaintiff would have been rejected for employment. Rather, Hevi-Duty argues that the plaintiff has failed to prove that he "applied" for employment. Precisely, they assert that the plaintiff's application had been "inactivated" by the one-year retention policy at the time they hired a number of individuals in February 1984, so that they were under no obligation to consider the plaintiff for employment.[9] The court finds Hevi-Duty's contentions meritless under two distinct rationales.

First, the plaintiff's "updates" of his 1981 application are the equivalent of new applications with new completion dates to which the one-year retention policy would apply. When the plaintiff supplemented his application in August of 1983, Hevi-Duty was bound to consider the plaintiff for employment through July of 1984. At the time Hevi-Duty hired new workers in February of 1984, the plaintiff's application was "active." Since Hevi-Duty fails to establish any justification for its failure to hire the plaintiff, the court finds that the plaintiff was the victim of racial discrimination through disparate treatment.

Second, even if the plaintiff had not supplemented his application by including new information, the requirement that the plaintiff "apply" for a job and be rejected in order to establish a prima facie case does not necessarily entail the filing of a written application. Rather, a generalized expression of interest may be considered an "application." *See Ferguson v. E.I. duPont de Nemours and Co.,* 560 F.Supp. 1172, 1193 (D.Del.1983). Such a holding is compelled under the circumstances of this case.

Where, as here, an individual applies for employment, is rejected without justification, files an EEOC charge for racial discrimination, settles the charge for a lump sum payment, and then returns to visit the office regularly to update and supplement his application, it should be obvious beyond question that he has expressed an extreme desire to be employed by that company. The employer, armed with knowledge of the applicant's repeated attempts to become employed, cannot deny employment to him by implementing a system of technicalities which in reality are no more than a subterfuge for racial discrimination in hiring.

Hevi-Duty emphatically argues that the record is devoid of proof of discriminatory motive and thus the plaintiff's case must fail under the theory of disparate treatment. While it is true that the plaintiff was treated politely by the personnel at Hevi-Duty and that proof of racial slurs were absent from the trial record, it is well settled that a prima facie showing of disparate treatment may be made without direct proof of discriminatory motivation. *See Gay v. Waiters' and Dairy Lunchmen's Union,* 694 F.2d 531, 546 (9th Cir. 1982). The court finds sufficient circumstantial evidence to warrant a finding that Hevi-Duty possessed the requisite intent to refuse to hire the plaintiff solely on the basis of his race. "The legal standard to be applied is simply whether the facts proved are sufficient to permit the court to infer, absent explanation, that the employment decision was more likely than not the product of intentional discrimination." *Furnco, supra,* 438 U.S. at 576, 98 S.Ct. at 2949. Intent may be inferred by the court assessing all the relevant facts and circumstances of the case. Hevi-Duty's employment practices, which include totally subjective hiring standards, a secret one-year application retention policy, and word-of-mouth recruitment, require exacting scrutiny because of the substantial potential for abuse. In particular, no justification exists for hiding from applicants the requirement

---

**9.** Since the application remained on file long after the one-year retention period, Hevi-Duty is forced to argue that the policy was "inactivated" rather than destroyed—as it would have been if the policy was actually in operation.

that they reapply after one year in order to be considered for employment. *Cf. Neely v. City of Grenada,* 438 F.Supp. 390 (N.D. Miss.1977) (uncommunicated ninety-day reapplication rule failed to meet business necessity test). The continuation of such employment practices provides a method whereby employers could "wait out" the minority applicants, clandestinely inform a few individuals that the application process would be opened for a brief period, hire from the select few, and perpetuate discrimination in hiring indefinitely.

Hevi-Duty attempts to impress the court with its zeal in hiring minorities by emphasizing the fact that its first two hirees were a black and a female. The fact that Hevi-Duty chose to award the first available position to a black does not preclude a finding by this court that it discriminated against a particular plaintiff.[10] Singling out an individual for racial discrimination renders an employer liable under Title VII just the same as if the employer had refused to hire blacks as a blanket practice. *See Gay, supra,* 694 F.2d at 537. Although Hevi-Duty is to be applauded for choosing a black as its first hiree, it must be noted that it continued to hire 20 white individuals without considering the plaintiff. Such behavior is inexplicable except to support a theory of racial discrimination.

Moreover, even if the defendant could successfully rebut the charge of racial discrimination, which it obviously cannot, the plaintiff is likewise entitled to prevail on his theory of retaliatory failure to hire. Hevi-Duty is equally culpable for its invidious mistreatment of the plaintiff in refusing to hire him because of his lawful acts in previously bringing an EEOC charge against Hevi-Duty. *See* 42 U.S.C. § 2000e–3(a). Regardless of Hevi-Duty's motivation for refusing to hire the plaintiff—be it racial discrimination or retaliatory failure to hire—the relief to be awarded is the same.

Additional substantial indicia of discrimination exist to support the court's finding that the plaintiff was the victim of disparate treatment. Hevi-Duty concedes that it made no efforts to recruit blacks for employment. Although over 95 percent of the blacks in Clay County live in a concentrated area called Free Hill, job notices were never posted there. It is clear that Hevi-Duty was aware from its affirmative action plan reports that its minority employment was below par. Moreover, when job vacancies were apparent in January of 1984 due to the anticipated contract, no efforts were made to advertise the openings through *any* medium.[11] The applications taken by Hevi-Duty from February 8 through February 10 were purely the result of word-of-mouth recruitment. The court is surprised that a black individual was even able to submit an application; the circumstances suggest that his appearance on the first day of hiring was procured rather than accidental. Evidence of intentional discrimination may be based upon a history of minimal recruiting efforts in publicizing job vacancies and job openings. *Rogers v. International Paper Co.,* 510 F.2d 1340, 1345, *modified* 526 F.2d 722 (8th Cir.1975). The practice of word-of-mouth recruiting, where employment depends primarily upon being referred to the company by an existing employee, has been determined to operate in a discriminatory manner against blacks. *See Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 427 (8th Cir. 1970); *Long v. Sapp,* 502 F.2d 34, 41 (5th Cir.1974). Where an employer's work force is almost entirely white, it is not surprising that such a system of recruiting produces few, if any, blacks.

Hevi-Duty's statistical proof shows that it employs 79 persons, two of whom are black, for a work force minority represen-

---

10. Richard Burris, the black hired by Hevi-Duty on February 8, 1984, had never filed an EEOC charge against Hevi-Duty. This finding preponderates in favor of the plaintiff on his claim of retaliatory failure to hire, *infra.*

11. Block did inform Job Services that they would be taking applications "through the door" but failed to file a job order for referrals from the Job Services files. A casual notification of this type opens the door for abuse by encouraging off-the-cuff referrals and thereby perpetuating discrimination in hiring.

tation of 2.5 percent. According to the 1980 census, 1.4 percent of Clay County's population was comprised of blacks. The court is unpersuaded by Hevi-Duty's suggestion that because it currently employs an adequate quota of blacks, it could not have been guilty of discriminating against the plaintiff. While statistics may be helpful in determining whether a general pattern of racial discrimination exists, *McDonnell-Douglas*, 411 U.S. at 805, 93 S.Ct. at 1825, they are useless to prove that discrimination did not exist in a particular situation. "It is clear beyond cavil that the obligation imposed by Title VII is to provide an equal opportunity for each applicant regardless of race, without regard to whether members of the applicant's race are already proportionately represented in the work force." *Furnco, supra*, 438 U.S. at 579, 98 S.Ct. at 2951.

In summary, the court finds the plaintiff was denied employment by Hevi-Duty through racial discrimination as well as retaliation for the plaintiff's protected activity in filing an EEOC charge.

### IV.

In examining the potential liability of the defendant, Gerald Block, the court notes initially that he was not named as a respondent in the EEOC charge filed by the plaintiff on January 24, 1984. Title VII requires the timely filing of an EEOC charge against all named defendants as a prerequisite to bringing suit in federal court. 42 U.S.C. § 2000e–5(e). Moreover, the defendant Block is not an "employer" within the meaning of Title VII. *See* 42 U.S.C. § 2000e(b); *Women in City Government United v. City of New York*, 515 F.Supp. 295, 299 (S.D.N.Y.1981). The employer guilty of a violation of Title VII is the one against whom affirmative relief, including backpay, may be adjudged. *Allen v. Lovejoy*, 553 F.2d 522, 525 (6th Cir. 1977). Therefore, the Title VII claim against Block shall be dismissed. The court also finds that Block did not in his individual capacity violate any of the plaintiff's rights protected by 42 U.S.C. §§ 1981 and 1983. Consequently, all of plaintiff's claims against Block shall be dismissed.

### V.

The court now addresses the claims against the state defendants. As an initial matter, the court holds that the State of Tennessee clearly has sovereign immunity from any award of damages by virtue of the Eleventh Amendment to the United States Constitution. A suit in federal court by private parties seeking to impose liability which must be paid from public funds is barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This time-honored legal principle was reaffirmed in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), which held that the provisions of 42 U.S.C. § 1983 did not override the traditional sovereign immunity guaranteed by the Eleventh Amendment. Therefore, judgment shall be entered in favor of the defendant State of Tennessee.

### VI.

Turning now to the plaintiff's claims against the Tennessee Department of Employment Security (Job Services) and its employee, Bobby Westmoreland, the court finds that the plaintiff is not entitled to recover on his theory that the state defendants discriminated in employment referral.

The plaintiff's case against the Job Services fails because a legitimate, nondiscriminatory explanation for failure to refer the plaintiff has been established. Job Services and Westmoreland did not refer the plaintiff to Hevi-Duty because they had secured the plaintiff a job at a major manufacturing company in the area. At the time of Hevi-Duty's three-day hiring period, the plaintiff was employed. Moreover, as set forth hereinabove, the plaintiff visited Job Services to file his application on or about February 7, *before* Westmoreland knew that Hevi-Duty was accepting applications. Westmoreland's lack of knowledge at the time of the plaintiff's visit precludes a finding that he intentionally failed to refer. Additionally, Job Services did not receive a job order from Hevi-Duty

under which they were obliged to conduct a file search for potential applicants. Several persons appeared at Hevi-Duty pursuant to Westmoreland's advice; however, the proof establishes that they were informed of the hiring at Hevi-Duty on a random and nondiscriminatory basis.[12]

Although veterans are granted a statutory priority for referrals from Job Services, *see* 38 U.S.C. § 2002; 20 C.F.R. § 652.120, these regulations fall short of requiring an employment agency to refer an *employed* veteran over an *unemployed* nonveteran as the plaintiff would urge. The plaintiff requested employment *only* at Hevi-Duty, and his application was therefore placed in a special box for referrals to Hevi-Duty. Had Job Services conducted a file search for referrals, the plaintiff's application likely would not have been included since the general applicants who are willing to be employed anywhere are selected for referral before those with a distinct preference. The plaintiff stood in the same position as any other applicant who was currently employed and seeking employment from only one concern. The court will not criticize Job Services' procedures which are devised to secure jobs first for the unemployed who are undeniably the most needful of employment. While numerous inconsistencies exist in the record regarding the dates Westmoreland referred prospective employees to Hevi-Duty,[13] there is no evidence that Williams visited Job Services at any time after filing his application in the Hevi-Duty box on February 7. In any event, the plaintiff's employed status represents a nonpretextual, legitimate reason for failing to refer.

The plaintiff attacks Westmoreland's justification for failure to refer as unworthy of credence by arguing that he referred an individual to Hevi-Duty who was employed at the time.[14] Carmack did not obtain his job with the City of Celina through Job Services, and Westmoreland denied knowledge of Carmack's employment. Carmack's Job Services application reflects that he started working for the City of Celina in December of 1983. However, in an office where 400 to 600 applicants are dealt with annually, Westmoreland cannot be charged with knowledge of one individual's job status on a given date.

## VII.

The Commissioner of the Tennessee Department of Employment Security, who lacked personal knowledge and exercised no direct supervision over the issue in dispute, is entitled to judgment in light of the court's finding of no discrimination by the state agency. Furthermore, the Commissioner is not a proper party under the Title VII action since plaintiff failed to name him as a respondent in the EEOC charge. 42 U.S.C. § 2000e–5(f)(1).

## VIII.

The plaintiff having established his claim against the defendant Hevi-Duty of racial discrimination and retaliatory failure to hire, which conduct amounts to violations of 42 U.S.C. §§ 1981 and 1983, as well as 42 U.S.C. § 2000e (Title VII), the court now addresses the relief to which the plaintiff is entitled.

Once a violation of Title VII has been established the court has the power to order whatever equitable relief, including but not limited to reinstatement or hiring, backpay, costs and attorney fees, as may be appropriate, 42 U.S.C. § 2000e–5(g).

Title VII and 42 U.S.C. § 1981 are coextensive and coterminous federal statutes which afford a federal remedy to an ag-

---

**12.** Westmoreland's "unofficial" referrals clearly are not the regular practice of Job Services. Mrs. Evelyn Bartlett, a nine-county supervisor for the Tennessee Department of Employment Security candidly admitted that informal referrals are not in accordance with state policy. While the court disapproves of these "off-the-cuff" referrals, the proof fails to show that Westmoreland's unprofessionalism resulted in discrimination against the plaintiff.

**13.** Several applications appear to have been accepted later than February 10, 1984.

**14.** Joe Carmack, an employee of the City of Celina, was advised by Westmoreland to apply at Hevi-Duty. He was hired on April 12, 1984.

grieved litigant who has been discriminated against in employment because of race. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–460, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975). The Title VII burden of proof analysis is used in § 1981 cases to determine whether a violation has occurred. Under § 1981 a prevailing plaintiff may recover both compensatory and punitive damages. *Harris v. Richards Mfg. Co.,* 675 F.2d 811 (8th Cir.1982). Under egregious circumstances, a plaintiff may be entitled to damages for emotional distress, mental and physical pain, agony, and embarrassment. *Johnson, supra,* 421 U.S. at 460, 95 S.Ct. at 1720. Plaintiff has presented no proof of emotional distress or embarrassment to support an award of compensatory damages in addition to the backpay award hereinafter set out; nor was the defendant's conduct so malicious as to sustain an award of punitive damages.

■ Because Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII, *Day v. Wayne Co. Board of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984), no additional relief shall be awarded for the § 1983 violation. Since the plaintiff will be "made whole" by the hiring mandate and the backpay award, any § 1983 damages would be cumulative. *Allen v. Lovejoy,* 553 F.2d 522, 525 (6th Cir.1977).

Accordingly, an order shall be entered providing relief as follows:

1. Hevi-Duty Electric Company is ordered to offer its first available position at the Celina plant to the plaintiff. Regardless of whether such a position is currently available, Hevi-Duty is ordered to place the plaintiff on its payroll effective as of the date of this memorandum and order, at the wage rate currently being paid comparable employees.

■ 2. The plaintiff is awarded backpay in the amount of $13,090.00. Had the plaintiff been hired on February 13, 1984, the date of the first hiring, at $6.05 per hour, the lowest hourly rate of the new hirees, he would have earned $242.00 weekly.[15]

■ The plaintiff earned an average of $123 per week at Osh-Kosh. He is awarded backpay for a period of 110 weeks—From February 13, 1984, through the date of this memorandum and order—for a total of $13,090.00.[16]

3. Plaintiff's counsel will be awarded reasonable attorney fees to be taxed as part of the costs which are hereby adjudged against the defendant Hevi-Duty.[17] *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). Plaintiff's counsel will submit an affidavit of time expended in support of his claim for attorney fees within 20 days, and defendant Hevi-Duty shall then respond within 10 days. If no agreement can be reached between the parties, the matter of attorney fees will be resolved by the court.

**15.** The court acknowledges that it is comparing gross earnings with net earnings for a slightly inaccurate amount of compensation. Defendants failed to submit proof as to net earnings of its employees. Any ambiguity in what the claimant would have received but for the discrimination should be resolved against the discriminating employer. *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 628 (6th Cir.1983), *cert. den.* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537.

**16.** Because the plaintiff voluntarily quit his job in January of 1985, he failed to reasonably mitigate his damages. Therefore, backpay is calculated based upon what he would have earned had he continued employment at Osh-Kosh.

**17.** Since the plaintiff has partially prevailed in this case, the court must consider what effect a partial victory has on the attorney fee award. The Sixth Circuit has adopted a liberal position, allowing recovery of fees for all time reasonably spent, regardless of whether some work was performed involving claims which were ultimately unsuccessful. *See Northcross, supra,* 611 F.2d at 636. Because it is inequitable to assess fees against Hevi-Duty for work performed on a related claim against a separate defendant, plaintiff's counsel will limit his fee application to hours expended in pursuing the claim against the defendant Hevi-Duty.

4. The court will enter an order permanently enjoining Hevi-Duty from any further violation of Title VII. A copy of said order shall be prominently posted promptly in all plants of the Hevi-Duty Electric Company.

An appropriate order will be entered.