Clara DAVIS, Plaintiff,

v.

STATE DEPARTMENT OF HEALTH, F.E. Thompson, Individually and as Chief of the Bureau of Preventive Health Services, and Doyle Bradshaw, Individually and as Director of the Division of Disease Control, Defendants.

Civ. A. No. J88–0374(L).

United States District Court, S.D. Mississippi, Jackson Division.

June 28, 1990.

Firnist J. Alexander, Jr., Jackson, Miss., for plaintiff.

T. Hunt Cole, Jr., Harrison Ford, R. Lloyd Arnold, James E. Graves, Jr., Sp. Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on separate motions of the defendants F.E. Thompson, individually and as chief of the Bureau of Preventive Health Services, and Doyle Bradshaw, individually and as director of the Division of Disease Control, and of defendant Mississippi State Department of Health (MSDH) to dismiss or, in the alternative, for summary judgment. Plaintiff Clara Davis has responded to defendants' motions and the court, having considered the memoranda of authorities together with attachments submitted by the parties, concludes that defendants' motions should be granted.

Ms. Davis is employed by the MSDH and currently occupies the position of Director II in the Sexually Transmitted Disease (STD) Program. She complains in this lawsuit that defendants have discriminated against her on account of her race by "failing and refusing to promote her" and "failing and refusing to reclassify her." Initially, plaintiff filed this action only against defendants Thompson and Bradshaw alleging violations by those defendants of 42 U.S.C. §§ 1981 and 1983. She later sought and was granted leave to amend her complaint to assert a claim under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e–17, and to add the MSDH as an additional defendant.

In response to defendants' motions, plaintiff concedes that she has not stated an actionable claim under section 1981 against any defendant, and that her section 1983 claim against the MSDH, and against Thompson and Bradshaw in their official capacities, is not viable.[1] She maintains, though, that she may proceed against the State Department of Health, as well as Thompson and Bradshaw in their individual and official capacities under Title VII, and further, that her section 1983 claim against Thompson and Bradshaw in their individual capacities remains viable.

*Title VII*

■ Each of the defendants asserts that the court lacks jurisdiction over plaintiff's Title VII claim since the amended complaint adding the Title VII claim was not filed within ninety days of plaintiff's having received the notice of right to sue letter from the EEOC. *See Munoz v. Aldridge,* 894 F.2d 1489, 1494 (5th Cir.1990) (timely filing of Title VII complaint in district court is jurisdictional). Under the circumstances of this case, the court concludes that it does have subject matter jurisdiction over the Title VII claim. Though the plaintiff did not file her amended complaint within ninety days of October 18, 1989, the date she received the notice of right to sue letter, she did, on December 28, 1989, seek leave of court to amend her complaint to add a Title VII claim. "The motion to amend alerted the parties and the . . . court to the coming Title VII claims, and thus 'curative steps' were taken within the ninety-day period." *Bunch v. Bullard,* 795 F.2d 384, 388 (5th Cir.1986). Simply because the court enjoys jurisdiction over the claim does not mean that these defendants must remain and defend the Title VII claims. To the contrary, as is discussed

more fully *infra,* the court is of the opinion that plaintiff has presented no evidence in response to defendants' summary judgment motions to demonstrate that a trial of her claims is in order.

■ Thompson and Bradshaw contend that since they were not named as respondents in the plaintiff's EEOC charge, they are not proper defendants for purposes of the Title VII claim before this court. Section 706(f)(1) of Title VII provides that "a civil action may be brought against a respondent named in the charge." 42 U.S.C. § 2000–5e(f)(1). The Fifth Circuit, though, while observing that "[o]nly parties previously identified as respondents in charges filed with the EEOC are subject to subsequent liability under Title VII," *Terrell v. United States Pipe & Foundry Co.,* 644 F.2d 1112, 1123 (5th Cir.1981), *cert. denied* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982), has adhered to "a rule of reason which permits the scope of a Title VII suit to extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Id.* More succinctly, "[t]he reasonable limits of an investigation potentially triggered by an EEOC charge define not only the substantive limits of a subsequent Title VII action, but also the parties potentially liable in that action." *Id.; see also Walls v. Mississippi State Dept. of Public Welfare,* 730 F.2d 306, 317–18 (5th Cir.1984). In this case, neither Thompson nor Bradshaw was named as a respondent in plaintiff's EEOC charge. Bradshaw, though, was clearly on notice that plaintiff's claims of discrimination were directed toward him and that an EEOC investigation would encompass his actions; she specifically stated in the body of the charge that she had been told by her immediate supervisor, Daniel Dohony, that Bradshaw had told him that if Davis were reclassified, she would be making more

---

1. As against the MSDH and Thompson and Bradshaw in their official capacities, she agrees that the Eleventh Amendment to the United States Constitution precludes an award of relief against the State or its departments under both section 1981 and section 1983. Further, she admits that she has not stated a claim against

Thompson or Bradshaw in their individual capacities under section 1981 in light of the Supreme Court's decision in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), since her claims relate to post-contract formation conduct.

money than Ellen Jones, a white female. Moreover, broadly construing plaintiff's charge, as Fifth Circuit precedent mandates, the court must also conclude that the nature of her complaints to the EEOC could be considered to bring Thompson, the director of plaintiff's division, within the scope of the EEOC investigation, and hence, into this lawsuit. However, the court concludes that plaintiff may not proceed against either Thompson or Bradshaw in their individual capacities under Title VII for reasons that follow.

■ Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1), makes it "unlawful ... for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." Section 701(b), 42 U.S.C. § 2000e(b), defines the term "employer" to mean "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...." *See Huebschen v. Department of Health and Social Services*, 716 F.2d 1167, 1171 (7th Cir.1983) (plaintiff's supervisor in Wisconsin Department of Health and Social Services not an "employer" within meaning of Title VII such that no Title VII claim could be maintained against her); *Allen v. Lovejoy*, 553 F.2d 522, 525 (6th Cir.1977) (employer county only proper defendant in Title VII action despite plaintiff's having named individual county officers and employees as defendants); *Packard–Knutson v. Mutual Life Ins. Co. of New York*, 668 F.Supp. 1261, 1265 (N.D.Iowa 1987) (manager of corporate defendant employer could have no liability in personal capacity under Title VII but only in official capacity as manager of agency); *Williams v. Hevi–Duty Elec. Co.*, 668 F.Supp. 1062, 1070 (M.D.Tenn.1986), *rev'd on other grounds*, 819 F.2d 620 (6th Cir.), *cert. denied*, 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987) (plant manager not an employer within meaning of Title VII); *Women in City Gov't United v. City of New York*, 515 F.Supp. 295, 299 (S.D.N.Y.1981) (Title VII plaintiff could not proceed against trustees of New York City Employees' Retirement System in their individual capacities; trustees, who at all times worked within scope of authority as trustees and as individuals, were not employers within purview of Title VII); *Clanton v. Orleans Parish School Bd.*, 649 F.2d 1084, 1099 (5th Cir.1981) (no authority for holding public officials personally liable for backpay under Title VII). Thus, these defendants cannot be considered "employers" in their individual capacities.

### Failure to Reclassify

■ Plaintiff's complaint contains no factual allegations concerning her claims of discrimination. Rather, she avers only that defendants discriminated against her by "failing and refusing to reclassify" her. In her deposition testimony and in her affidavit submitted in response to defendants' motion, she has attempted to elucidate her position. According to plaintiff, she first became employed by the MSDH in October 1976 as a clerk typist. She later held the position of Public Health Advisor and ultimately was transferred into the Sexually Transmitted Diseases (STD) Program, in which she occupied the position of Director II. She claims that when she was transferred into the STD program, she was to and did in fact perform as Statistician, the title of which has since been changed to DP–Technical Specialist. However, she was neither classified as nor paid as a statistician. Plaintiff states in her affidavit that in April 1988 Daniel Dohony, the STD Control Program director and plaintiff's supervisor, indicated that he desired that plaintiff's position be reclassified from Director II to DP–Technical Specialist. However, upon discussing his recommendation with Bradshaw, the director of the Division of Disease Control, Bradshaw told Dohony that he was not in favor of the reclassification since it would mean that plaintiff would be earning more money than Ellen Jones, a white female. Plaintiff, therefore, attributes the fact that she was not reclassified to defendants.

It is undisputed that plaintiff desired to be reclassified as DP–Technical Specialist and that Dohony's request for her reclassification was refused. However, the uncontrovertible facts do not support plaintiff's theory concerning this refusal. Indeed, the facts establish beyond question that Bradshaw and Thompson had approved Dohony's efforts to have plaintiff's position reclassified or reallocated. The record evidence shows that in April 1988, a formal request that Clara Davis' position, because of the nature of the functions it entailed, be reclassified from Director II to DP–Technical Specialist was transmitted to the personnel director of MSDH, Walter Booker. The request, which had been generated by Dohony, was forwarded to Booker by Bradshaw, and the document indicated that a copy was also sent to Thompson. According to Booker's uncontroverted affidavit, upon receipt of the request, he, consistent with the MSDH's policy, requested an analysis of the job duties and responsibilities of the Director II position to determine whether the proposed change in position was justified. This analysis was performed by John R. Head of the MSDH personnel department. In a memorandum to Amanda Shumaker of the personnel department, Head opined that "[r]eallocation of this position to a DP–Technical Specialist III is inappropriate for a number of reasons," and recommended instead that plaintiff's position be reallocated or "upgraded" to Health Program Specialist. Therefore, a second request was prepared by Dohony, requesting that plaintiff's position be reclassified as a Health Program Specialist Senior. Upon submission to the State Personnel Board, the request was denied.

There is no indication whatsoever that Thompson or Bradshaw was in any manner responsible for the denial of the request for reclassification of plaintiff's position, nor that the MSDH denied the request or caused the request to be denied. The decision was made solely and exclusively by the State Personnel Board; these defendants could not have failed to reclassify the position, as alleged by plaintiff, since they did not have the authority to reclassify any position. Since the defendants had no authority, the sole conceivable basis for plaintiff's claim would be that they took some action to prevent the reclassification. However, the record reveals not only that Bradshaw and Thompson did nothing to impede the request or approval of the request for reallocation, but they, in fact, concurred in and supported Dohony's attempt to have the position "upgraded." Plaintiff's theory that the defendants were responsible for the failure to reclassify her position amounts to nothing more than rank speculation. In her deposition, plaintiff acknowledged that she did not even know if Thompson or Bradshaw had agreed to the reallocation of her position and she further appeared to have been unaware of the fact that the State Personnel Board, and not the defendants, had actually refused the request for reclassification. Since the proof establishes that the defendants did not fail to reclassify plaintiff's position nor cause the denial of her request for reclassification, they cannot be liable to plaintiff for the alleged failure to reclassify and are therefore entitled to judgment on plaintiff's claim under Title VII relating to failure to reclassify.

*Failure to Promote*

As with her failure to reclassify claim, plaintiff has alleged no facts in the complaint to indicate the substance of her charge of discrimination based on a failure to promote. The court has gleaned her position from her affidavit and deposition testimony. Plaintiff contends that on April 29, 1988, the position of Aids Information Specialist became available. Thompson and Bradshaw were aware that she was qualified for the position and was interested in the position, but nevertheless on May 9, 1988, without first posting or advertising the position, submitted a request for personnel action promoting a less qualified white employee, Nancy Strahan, to the position.

In their motions, defendants assert that the position in question was filled by an agency-only non-competitive promotional transfer, as authorized by the Rules and Regulations of the State Personnel Board. The regulations, at paragraph 95, define

"promotion, agency non-competitive" as "[t]he nomination and subsequent promotion of a qualified state service employee of the respective agency by the appointing authority." Further, as to eligibility for agency-only non-competitive promotions, paragraph 2.12.10 of the regulations states that

> [a]ll state service employees for non-competitive promotional consideration shall have completed at least six (6) months of their probationary period and shall meet the selection criteria and *shall be certified by the State Personnel Director* as eligible for the position (emphasis supplied).

To withstand defendants' motions under Title VII, plaintiff must present evidence to show, *inter alia,* that she was qualified for the position that was allegedly denied her. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It is undisputed that the position of Aids Information Specialist was to be filled by a person eligible for the classification of Health Program Specialist Senior. It is further undisputed that as of April 29, 1988, the date the position became available, and May 9, 1988, the date Ms. Strahan was selected for the position, plaintiff had not been certified as eligible for the position of Health Program Specialist Senior. Ms. Strahan, though, did possess the necessary classification as plainly reflected on the certificate of eligibles provided by the State Personnel Board. Accordingly, it cannot reasonably be disputed that while plaintiff likely possessed the necessary skills and knowledge to perform the job in question, at the time the selection was made, she was not qualified for the position because she had not been certified as eligible for the position by the State Personnel Board.

Plaintiff argues that even though she did not possess the necessary classification when Ms. Strahan was selected for promotion on May 9, defendants' request that Ms. Strahan be promoted was not approved until some time thereafter and was not effective until June 1, 1988. In the interim, plaintiff had applied to the State Personnel Board for certification of her qualifications as Health Program Specialist Senior, and was certified as eligible on May 17, 1988, before the promotion of Ms. Strahan became effective. The pertinent question for consideration in this case is not whether the defendants should have promoted the plaintiff, but whether they made a decision not to promote plaintiff, and to instead promote a less qualified white employee, on account of the plaintiff's race. The undisputed facts show that is not the case here. There is nothing whatsoever to indicate that the decision at issue was race based. To the contrary, when the promotion decision was made, plaintiff was simply not qualified for the position. Even though she subsequently became qualified, and even though she became qualified prior to the time Ms. Strahan's promotion actually became effective, the defendants were not required to withdraw their previous request for Ms. Strahan's promotion and promote plaintiff instead simply because she is black.[2] Because the evidence demonstrates that plaintiff was not qualified for the position, defendants are entitled to judgment on plaintiff's Title VII claim for failure to promote.

### Section 1983

■ The only remaining claim to be addressed is plaintiff's section 1983 claim

---

**2.** In addition to their assertion that plaintiff was not qualified for promotion to the position, defendants maintain that they were not aware that plaintiff was interested in the position. In essence, they argue that she did not apply for the position. The fact that plaintiff did not actively seek the position is, in the court's opinion, of no moment in this particular case for defendants neither sought nor obtained applications from anyone, including Ms. Strahan. Plaintiff argues that she was not aware that the position was available until after Ms. Strahan was promoted,

and appears to suggest that had she been advised by defendants that the position was to become available, she would have taken steps to become certified as eligible such that she could have been considered for the position. However, plaintiff does not dispute that under the Rules and Regulations of the State Personnel Board, defendants were not required to post the position or advertise the opening, and there is no proof that defendants attempted to conceal from the plaintiff the fact that there was an opening.

against defendants Thompson and Bradshaw in their individual capacities. The Fifth Circuit has held that "insofar as (section 1983) is used as a parallel remedy for transgression of ... section 706 of Title VII rights, the elements of the causes of action do not differ from those (of Title VII)." *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir.1980); *see also Merwine v. Board of Trustees for State Institutions*, 754 F.2d 631, 635 n. 4 (5th Cir.), *cert. denied*, 474 U.S. 823, 106 S.Ct. 76, 88 L.Ed.2d 62 (1985) (when § 1983 is used as parallel remedy with Title VII in discrimination suit, elements of substantive cause of action are the same under both statutes); *Rivera v. City of Wichita Falls*, 665 F.2d 531, 534 n. 4 (5th Cir.1982) (same). That is, "enforcing Title VII through section 1983 grants no greater substantive rights to a plaintiff than proceeding directly under (Title VII)." *Huebschen v. Department of Health and Social Services*, 716 F.2d 1167, 1170 (7th Cir.1983) (citing *Rivera*). Consequently, one who cannot present evidence to satisfy the substantive proof requirements under Title VII cannot proceed under section 1983 for a violation of Title VII. In the court's view, an essential element of proof in a Title VII claim is that the defendant sued is, in fact, an employer under Title VII. As this court has previously concluded, these defendants are not, in their individual capacities, plaintiff's employer. It follows that plaintiff may not proceed under section 1983 against them to establish a Title VII violation.[3] In *Huebschen*, cited above, the Seventh Circuit, relying on Fifth Circuit precedent, reached the same conclusion: "Rader (plaintiff's supervisor) was not an employer and thus did not violate Title VII. Therefore, there is no legal basis for allowing Huebschen to bring a section 1983 suit against her based on Title VII when he could not sue her directly under Title VII." *Id.* at 1170–71.[4]

In this circumstance, "[p]ersonal liability, if any, of the individual defendants must be predicated upon a constitutional violation under § 1983." *Clanton v. Orleans Parish School Bd.*, 649 F.2d 1084, 1099 (5th Cir.1981); *cf. Wallace v. City of New Orleans*, 654 F.2d 1042, 1044 (5th Cir.1981) (plaintiff permitted to proceed under § 1983 for Fourteenth Amendment equal protection violation despite district court's dismissal of her Title VII claim on ground that defendants were not "employers" within meaning of Title VII). The court will assume, here, that plaintiff seeks to charge a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[5] To succeed on such a claim, she must prove that defendants intentionally discriminated against her because of her race, and not merely that they treated her unfairly as an individual. "[T]he decisionmaker [must have] selected or reaffirmed a particular course of action at least in part 'because of,' and not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). From the proof above described, it is apparent that plaintiff cannot sustain her burden in this regard. There is no competent proof that defendant made any decision regarding plaintiff because of her race.[6] Bradshaw and Thompson are

3. Of course, the court has already concluded that plaintiff has not presented proof that defendants violated Title VII and she could therefore not succeed against them to the extent that her section 1983 claim is predicated on a Title VII violation in any event.

4. There is no issue before the court of whether section 1983 might be employed by plaintiffs who have not complied with the *procedural* particularities of Title VII. The court's conclusion goes only to the substance of Title VII.

5. The court's assumption may well be unwarranted as there is nothing in plaintiff's com-

plaint to indicate that she sought to charge a constitutional violation. At the time plaintiff first filed her complaint, she alleged only that defendants' failure to reclassify and failure to promote her were in violation of sections 1981 and 1983, with no explanation of the basis of her section 1983 action. Only after she received the notice of right to sue letter from the EEOC did she amend her complaint to add the Title VII claim. However, the court will indulge in this assumption in order to comprehensively treat the plaintiff's allegations.

6. Though plaintiff has not procured an affidavit from Dohony, she states in her affidavit that

entitled to judgment on plaintiff's section 1983 claim.

Based on the foregoing, it is ordered that defendants' motions to dismiss or, in the alternative, for summary judgment are granted.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

ORDERED.

Dohony told her that Bradshaw had said he would not allow her to be reclassified because that would make her salary higher than the salary received by Ellen Jones, a white female. In the court's opinion, the statement is inadmissible hearsay. In any event, even if not hearsay, the court does not consider this statement particularly probative since regardless of what Bradshaw may have said, he did approve Dohony's efforts to have plaintiff's position reclassified and since the State Personnel Board, not Bradshaw, denied the request.